# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY SWARTZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 21-03168-CV-S-WBG |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Kimberly Swartz's appeal of Defendant Acting Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1973 and has "at least a high school equivalency (GED) education." R. at 99, 101, 511. She has past relevant work as a cosmetologist, a teller, and a children's institution attendant. R. at 511, 673. In January 2010, Plaintiff applied for disability insurance benefits and supplemental security income alleging a disability onset date of December 1, 2008. R. at 99-104. Her applications were denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 47-51, 54-55.

In August 2011, after Plaintiff's first administrative hearing, ALJ William Churchill issued a decision finding Plaintiff not disabled. R. at 12-23, 738-45. After Plaintiff unsuccessfully

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

appealed ALJ Churchill's decision to the Social Security Administration's Appeals Council, she then appealed to the United States District Court for the Western District of Missouri. R. at 1-8, 750-54; *Dinkel v. Colvin*, No. 13-03063-CV-S-SWH.[2] At Defendant's request, the District Court reversed and remanded Plaintiff's claim, and the Appeals Council remanded the matter to the ALJ on January 9, 2014. R. at 755-62; *Dinkel v. Colvin*, No. 13-03063-CV-S-SWH.

In January 2014, ALJ James Gillet held Plaintiff's second administrative hearing during which Plaintiff; James Haynes, M.D., an impartial medical expert; and a vocational expert ("VE") testified. R. 527-85. In May 2014, the ALJ issued an unfavorable decision finding Plaintiff is not disabled. R. at 766-81. Plaintiff appealed the decision to the Appeals Council, which remanded the matter to the ALJ in January 2016. R. 788-92, 912-13. Plaintiff's third administrative hearing was held in August 2016. R. at 586-681. Relevant to this appeal, Plaintiff and O. Gerald Orth, M.D., an impartial medical expert, testified. *Id*. In July 2017, ALJ Gillet again found Plaintiff is not disabled. R. at 797-815. Again, Plaintiff appealed, and the Appeals Council remanded the decision to the ALJ. R. at 825-29, 976-78.

In March 2019, ALJ Robert Lynch conducted Plaintiff's fourth administrative hearing during which Plaintiff; William Rack, M.D., an impartial medical expert; and a VE testified. R. at 682-734. In August 2019, ALJ Lynch issued his decision. R. at 466-512. The ALJ found Plaintiff's severe impairments are multiple sclerosis ("MS"), relapsing and remitting; migraine without aura and with status migrainous, not intractable; rebound headaches; obstructive sleep apnea; morbid obesity; major depressive disorder; and generalized anxiety disorder. R. at 470. He

---

[2] When Plaintiff applied for disability insurance benefits and supplemental security income, her name was Kimberly Dinkel. R. at 99-104. Sometime between 2019 and 2021, Plaintiff's name changed to Kimberly Swartz. R. at 462, 687.

determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations:

> [S]he can lift 10 pounds occasionally and 5 pounds frequently; she can stand and/or walk for a cumulative total of 2 hours during an 8-hour workday, but for no more than 20 minutes continuously, and she can sit for a cumulative total of 6 to 8 hours during an 8-hour workday. The claimant can occasionally climb ramps and stairs, but can never climb ladders and scaffolds; she can occasionally stoop, kneel, and crouch, but can never crawl; and she cannot perform work that requires her to reach, handle, finger or feel on more than a frequent basis. The claimant cannot work in environments that would result in concentrated exposure to extreme heat, extreme cold, or vibration, and can never work at unprotected heights. She also cannot perform work that requires driving motor vehicles or operating powered machinery, such as lawn mowers. The claimant is limited to performing work that consists of simple, routine, and repetitive tasks, in an environment that the [sic] does not require interaction with the public, and requires no more than occasional and superficial interaction with coworkers and supervisors.

R. at 482.

Based upon his review of the testimony during all four administrative hearings, the lengthy record, and his RFC determination, ALJ Lynch determined Plaintiff is not disabled and can work as a document preparer and touchup screener. R. at 466-512. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 457-60, 1102-07. She now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether the Commissioner's decision complies with relevant legal standards and whether substantial evidence supports the Commissioner's findings. 42 U.S.C. § 405(g); *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020). This Court must affirm the Commissioner's decision if it is supported by substantial evidence provided in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence requires less than preponderance of evidence. *Bagwell*

*v. Commissioner*, 916 F.3d 1117, 1119 (8th Cir. 2019). Evidence is substantial if a reasonable mind would find it sufficient to support a conclusion. *Id.*

In evaluating for substantial evidence, a court must consider evidence that supports and detracts from the ALJ's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). If the record supports two inconsistent conclusions, and the Commissioner adopted one of those conclusions, this Court must affirm. *Bagwell*, 916 F.3d at 1119.

### III. DISCUSSION

Plaintiff contends the Acting Commissioner's decision must be reversed because the ALJ's RFC is not supported by substantial evidence. *See* Doc. 13 at 1, 11-30. Specifically, she argues (A) the ALJ improperly addressed her migraines, headaches, and fatigue; and (B) the mental functional limitations are not supported by substantial evidence. *See id*. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC "must be supported by some medical evidence" but does not need to "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

A.      The ALJ's Assessment of Plaintiff's Migraines, Headaches, and Fatigue

With regard to her migraines, headaches, and fatigue, Plaintiff argues the ALJ failed to properly consider (1) the medical opinions, (2) her subjective complaints, and (3) other medical evidence. Doc. 13 at 12.

**(1)     Weight Afforded to Medical Expert Testimony**[3]

Plaintiff argues the ALJ "failed to give good reasons for discounting the opinions of Drs. Haynes, Orth and Rack," the impartial medical experts who testified at her last three administrative hearings. Doc. 13 at 15-17. When determining whether an individual is disabled, an ALJ considers medical opinions from acceptable medical sources. 20 C.F.R. §§ 404.1527(a)(1), (b), 416.927(a)(1), (b). Under the regulations applicable to this case, treating medical sources' opinions are generally given "more weight" than opinions from non-treating medical providers. *Id*. §§ 404.1527(c)(2), 416.927(c)(2).[4] This is because treating medical providers "are . . . able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." *Id*. The ALJ will give "controlling weight" to a treating provider's "medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id*.

---

[3] Drs. Haynes, Orth, and Rack testified about Plaintiff's overall physical condition. *See* Tr. at 553-77, 641-71, 705-22. However, because Plaintiff appeals the ALJ's consideration of her migraines, headaches, and fatigue, the Court's discussion is limited to those conditions.

[4] Because Plaintiff filed her applications before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 apply.

If controlling weight is not given to a treating source's medical opinion, the ALJ must consider certain factors when deciding what weight to give the medical opinion. *Id.* §§ 404.1527(c), 416.927(c). These factors include the length, nature, and extent of the treatment relationship; examination frequency; whether the opinion is supported by evidence and explanation; whether the opinion is consistent with the record as a whole; whether the opinion is from a specialist about issues related to his/her specialty area; and any other factors that "tend to support or contradict the medical opinion." *Id.* §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Regardless of the weight afforded a treating source's opinion, the ALJ must "give good reasons" explaining why the ALJ gave said weight to a treating source's medical opinion. *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

  **(a)**  **James Haynes, M.D.**

Dr. Haynes, a neurologist and impartial medical expert, testified at Plaintiff's second administrative hearing in January 2014. Tr. at 553-77. He testified Plaintiff's headaches were "treatable," and there were "grounds for improvement." R. at 558, 571. Based on his review of the medical records, Dr. Haynes opined Plaintiff could perform sedentary to light work with some additional limitations related to postural activities, environment, and cognitive functioning. R. at 562-67. He also testified that Plaintiff's symptoms "far outweigh" the objective evidence in the record. R. at 558. Related to absences due to migraines, Dr. Haynes testified that based solely on Plaintiff's testimony and subjective reasons, she may miss two or three days of work per month. R. at 573-74. He did not, however, identify any objective evidence or criteria concerning absenteeism due to headaches. *See id*.

The ALJ afforded "substantial weight" to, among other things, the portions of Dr. Haynes's testimony supported by objective findings of Plaintiff's treating physicians. R. at 507. However,

the ALJ gave "less than substantial weight" to Dr. Hayne's testimony about Plaintiff's absences from work. *Id*. He stated, "Dr. Haynes was not comfortable testifying as to the number of monthly absences that were supported by the objective evidence in the record, as he repeatedly indicated that this conclusion would be based primarily, if not exclusively, on the truth of the subjective complaints of the claimant." R. at 506. The ALJ further noted Dr. Haynes's conclusion that Plaintiff's "symptoms and limitations from headaches [were] based almost entirely upon [her] subjective complaints," which Dr. Haynes believed Plaintiff was "over reporting," and he was not "comfortable assessing" the credibility of her statements. *Id*.

Additionally, the ALJ found Dr. Haynes did not describe any "objective findings" that would support a particular number of absences per month.[5] *Id*. He further observed that had Dr. Haynes had access to additional physical therapy treatment records from December 2013 through April 2014, he would not have agreed that Plaintiff may be absent from work two to three times per month. *Id*. This additional evidence, according to the ALJ, "portray[ed] a much different picture of the claimant's capabilities than she described in her testimony" at the hearing during which Dr. Haynes testified. *Id*.

### (b) O. Gerald Orth, M.D.

Dr. Orth, a neurologist and impartial medical expert, testified at Plaintiff's third administrative hearing in August 2016. R. at 641-71. He opined Plaintiff did not meet a listing[6] prior to 2014 due to the "doggone horse incident,"[7] but she met the MS listing in 2014. R. at 651,

---

[5] During the hearing, Plaintiff's counsel did not identify any objective findings supporting a particular number of absences per month. R. at 506.

[6] When determining whether a claimant is disabled, the ALJ employs a five-step process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under step three, the ALJ considers the severity of the claimant's impairment and whether the impairment meets or equals a listed impairment. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In the instant matter, Plaintiff does not appeal the ALJ's listing determination. *See* Docs. 3, 13.

[7] In September 2013, Plaintiff tore her ACL after an incident involving a horse. *See* R. at 503, 539-40, 658-61, 1320, 1330, 1332, 1716, 1741, 2134, 2349, 3310, 3335. Plaintiff's version of what occurred has varied from being "stepped

7

Case 6:21-cv-03168-WBG   Document 24   Filed 09/29/22   Page 7 of 19

657. Dr. Orth found "no correlation" between Plaintiff's "fatigue or headache[s]" and "the number of MS plaques" on the MR scan. R. at 646. When asked by Plaintiff's counsel, Dr. Orth agreed it would be reasonable for Plaintiff's symptoms to require "extra unscheduled breaks during the workday" or cause her to "miss work even once or twice per month." R. at 670-71.

The ALJ afforded Dr. Orth's opinion "some, but less than substantial weight" due to the "confusing nature of [his] testimony and the number of times his conclusions changed." R. at 510. For example, in September 2016 and in response to interrogatories propounded after the hearing, Dr. Orth found Plaintiff met the MS listing requirements in 2014 because of MRI findings, which changed her MS diagnosis from "benign" to "relapsing remitting." R. at 476, 1712-18. But when asked to clarify his opinion, Dr. Orth did not provide an explanation, but instead cited different portions of the neurological listings to support his conclusion that Plaintiff met a listing. R. at 12-18. And in January 2017, in response to additional interrogatories, Dr. Orth changed his opinion again, concluding Plaintiff "does not have marked limitation in physical functioning," and thus, did not meet a listing. R. at 476, 1749. He noted "Exhibit 36F[8] would appear to eliminate [fatigue] as a strong factor in [his] previous favorable opinion regarding meeting listing under Multiple Sclerosis." R. at 1749. After considering all the information received from Dr. Orth, the ALJ found Dr. Orth ultimately concluded Plaintiff did not meet a listing. R. at 476.

  **(c)**  **William Rack, M.D.**

Dr. Rack, a neurologist and impartial medical expert, testified at Plaintiff's most recent administrative hearing in March 2019. R. at 705-22. Based on his experience, training, and review

---

on," "knocked down," "bumped," "hit," the horse "ran into" her, or she lost her balance and fell. *Id*. Dr. Ortho testified that if Plaintiff "was so impaired," he did not know what she was "doing playing with her horses." R. at 657.

[8] Exhibit 36F is a Cooperative Disability Investigations Unit ("CDI") report from November 2016. R. at 1740-46. The Court discusses this report *infra* section III(A)(2)(b).

of the medical evidence, Dr. Rack concluded Plaintiff met the listing for MS, but she does not have "marked limitation in physical functioning," and there were some aspects of the listing that have not significantly affected her. R. at 715-17. He opined the fatigue Plaintiff experiences from her MS would be "an extremely limiting factor," and "at most," she would be capable of sedentary work. R. at 718. Dr. Rack further found Plaintiff is unable to perform sedentary work for a forty-hour workweek due to both physical and emotional reasons. R. at 719. When asked to identify the date on which Plaintiff's impairments limited her to that level of work, Dr. Rack stated, "I would think it goes back to 2008, but I don't have any methodology that I can particularly make that judgment in looking at her records." R. at 718-19; *see also* R. at 720 ("I cannot pick out a date in the meantime."). He also testified "fatigue," and "the presence of discomfort" are "non-measurables" and "very common in patients who have multiple sclerosis." R. at 713.

The ALJ afforded Dr. Rack's opinion "less than substantial weight." R. at 508. Specifically, he found that although "portions of Dr. Rack's testimony [were] consistent with the residual functional capacity assessment," "little weight is afforded to his opinion that he did not think the claimant would be able to complete a 40-hour workweek due to fatigue." *Id*. In support of his conclusion, the ALJ noted Dr. Rack was unable to determine when Plaintiff's impairments caused "limitations of sufficient severity to prevent [her from] working for a 40-hour workweek." R. at 508-09. The ALJ also observed Dr. Rack was "unable to support any of his opinions with citations to specific portions of the record, or to provide any evidence to support dates of onset." R. at 509. He was not "convinced that Dr. Rack fully appreciated the numerous inconsistencies in the record between the claimant's subjective reports to her physicians and her observed and stated activities demonstrated elsewhere in the record." *Id*.

9

Case 6:21-cv-03168-WBG   Document 24   Filed 09/29/22   Page 9 of 19

After careful review of the record, the Court finds the ALJ's evaluation of opinions provided by Dr. Haynes, Dr. Orth, and Dr. Rack is consistent with the regulatory requirements discussed above. The ALJ addressed both the supportability and consistency factors and provided "good reasons" for giving each opinion less than substantial weight related to their evaluation of migraines, headaches, and fatigue, and/or the potential work absences resulting from the same. *See Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020) (noting if a physician's opinion is "internally inconsistent or conflicts with substantial evidence contained within the medical record as a whole, the ALJ may afford it less weight.").

It is the ALJ's role to weigh medical evidence and resolve conflicts amongst medical opinions. *Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020). On review, this Court is not permitted to reweigh the evidence before the ALJ. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). If substantial evidence supports the ALJ's decision, this Court may not reverse the decision "even if inconsistent conclusions may be drawn from the evidence," or the Court "may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citation omitted). As detailed above, some testimony from the medical experts was inconsistent and at times confusing. Other aspects of the testimony were not consistent with other evidence in the record. The ALJ fully addressed each medical expert's testimony and provided good reasons to explain the respective weights assigned to this evidence. For the foregoing reasons, the Court finds substantial evidence in the record supports the ALJ's decision affording Drs. Haynes, Orth, and Rack's opinions about migraines, headaches, and fatigue less than substantial weight.

**(2) Subjective Complaints**

Plaintiff asserts the ALJ failed to "provide substantial support" for his conclusion that Plaintiff's symptoms and limitations are not as debilitating as she claims. Doc. 13 at 23-24.

**(a) Standard**

When evaluating a claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each factor. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

On appeal, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Id*. (citation omitted). This is because determinations about a claimant's subjective complaints "are in the province of the ALJ," and this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

### (b) ALJ's Evaluation of Plaintiff's Subjective Complaints

The ALJ found Plaintiff's "testimony, statements, and subjective reports of symptoms to her medical and mental health providers" do not provide a "sufficiently reliable basis for determining" her RFC. R. at 498. In reaching this conclusion, he considered "all other probative evidence in addition to the objective medical evidence when assessing the consistency of" Plaintiff's statements as her reported symptoms "sometimes suggest a level of impairment more severe than shown by the objective medical evidence alone." R. at 497.

The ALJ reviewed (and summarized) Plaintiff's testimony during the four administrative hearings in July 2011, January 2014, August 2016, and March 2019. R. at 498-505. Among other things, the ALJ considered Plaintiff's allegations of daily headaches and migraines, severe fatigue, and, at times, debilitating symptoms resulting in her "remaining in bed more than half of the days of the month." R. at 497. But the ALJ noted the severity of Plaintiff's alleged symptoms were not supported by the objective medical evidence. R. at 497-98. For example, a treatment note from May 2011, which was two months before the first hearing, demonstrated Plaintiff's "dyspnea had improved since she had been exercising five days a week," and it appeared she "continued this pattern of exercise." R. at 498 (citing Exs. 31F/221 (R. at 1670), and 55F/394 (R. at 3999) ("Patient exercises daily.")). Further, and contrary to Plaintiff's January 2014 testimony that she was bedridden more than half the month, the ALJ evaluated Plaintiff's records during the four weeks prior to her hearing, which showed regular attendance at physical therapy sessions" between mid-December 2013 and mid-January 2014, noted Plaintiff "traveled to Mississippi for the New Year's holiday," and she "attended an appointment" two days before the hearing. R. at 498 (citing Exs. 30F/31 (R. at 1448) and 50F/48-79 (R. at 3334-65)). The ALJ concluded that although it was possible Plaintiff "was confined to bed on the days" she did not have one of her nine appointments,

"the therapy treatment notes contain no indication she experienced debilitating fatigue, headaches or dizziness that confined her to bed." R. at 498-99.

The ALJ also noted Plaintiff attended a physical therapy session the same day as her January 2014 hearing during which she reported "doing better" and did not complain of "fatigue, dizziness, increased pain, or a headache" following the exercises. R. at 499 (citing Ex. 50F/83 (R. at 3369)). Thus, he concluded Plaintiff's "ability to perform these exercises on the afternoon of the day of her hearing is very inconsistent with [her] description of her functioning in her sworn testimony at her hearing that morning." R. at 499. In addition, six days after the hearing, Plaintiff reported she "was able to shop and walk," could "walk on a flat surface with her brace without significant pain or swelling," and was "[s]till doing well." R. at 499 (citing Ex. 50F/86 (R. at 3372)). The ALJ also observed that between January 2014 and her August 2016 hearing, Plaintiff frequently reported exercising, going to tanning beds, and traveling for vacations or with family. R. at 500-01 (citing Exs. 30F/14, 19, 25, 28, 30-31 (R. at 1431, 1436, 1442, 1445, 1447-48), 50F/86, 125 (R. at 3372, 3411), and 55F/373 (R. at 3978)).

The ALJ also observed that in November 2016, a CDI was conducted to "investigate inconsistences between claimant's alleged disabilities and the evidence in file." R. at 469-70, 501, 1739-46. The investigation included interviews, surveillance, and a review of the record. R. at 501, 1740-46. Investigators observed Plaintiff walking easily, with no abnormalities in her gait, and without the use of an assistive device. R. at 501, 1744-45. During a twenty-seven-minute conversation with the investigators, Plaintiff stood next to her truck and never showed signs of pain or discomfort. R. at 501-02, 1744-45. Plaintiff advised investigators that in May 2016, she

and her husband drove to Colorado for a week where they rode horses and hiked.[9] R. at 501, 1745. The investigators observed surveillance footage from Plaintiff's local grocery store revealing she walked with a "normal gait at a normal pace and was not assisted by any person or device." R. at 502, 1745. Further, investigators determined Plaintiff previously owned two mobile homes that she rented out, and individuals at the mobile home park described Plaintiff as "a nice lady, very pleasant," who appeared to "walk normally," with no "noticeable disabilities." *Id*.

The ALJ also considered Plaintiff's contradictory versions of how she injured her knee. R. at 503. He noted that although the "precise facts surrounding how [Plaintiff] injured her knee are not important to determining the severity of her knee injury," "the clear discrepancies between" the testimony she provided "is less than fully reliable." R. at 504. "Consequently, it negatively affects the degree to which [Plaintiff's] complaints about the frequency and severity of her other symptoms can form a basis for determining her actual limitations." *Id*.

In addition, the ALJ noted the record established Plaintiff was not consistently complying with the recommended treatment or medication. R. at 504. For example, in January 2013, Papaiah Sreepada, M.D., Plaintiff's treating neurologist, noted Plaintiff had "migraine headache superimposed with chronic tension type of headache and rebound phenomena from chronic intake of caffeine products." R. at 504, 1272. As a result, Dr. Sreepada recommended Plaintiff avoid "drink[ing] too much of caffeine products." R. at 504, 1272. Yet, in March 2018, Plaintiff admitted to her dietician that she drank "very little water," and her "primary beverage is Dr. Pepper (anywhere from 24 oz to 84 oz/day)." R. at 504, 4030.

---

[9] During the fourth administrative hearing, Plaintiff testified, "We went to Estes Park, but we did not hike. We drove." R. at 702.

Further, Plaintiff did not consistently take her migraine and MS medications. *See* R. at 504. For example, Plaintiff "stopped taking her prophylactic medication" for migraines at times and admittedly missed 10 injections of Copaxone for MS. R. at 504, 452, 1411. Various medical care providers also noted Plaintiff was frequently noncompliant with her medication regimen. R. at 504 (citing Ex. 55F/76, 132, 139, 151, 158, 175, 183, 191, 209, 228, 237, 246, 261, 271, 292, 301, 312, 323, 334 (R. at 3681, 3737, 3744, 3756, 3763, 3780, 3788, 3796, 3814, 3833, 3842, 3851, 3866, 3876, 3897, 3906, 3917, 3928, 3939)); *see also* R. at 1452, 1464, 1471, 1869, 1879, 1889. 1914, 1924, 1932, 1950, 1968, 1977, 1985, 1996, 3182, 3193, 3215, 3225, 3241, 3250.

Plaintiff contends the ALJ "relied on a selective reading of the record" in consideration of her activities. Doc. 13 at 24. This argument is without merit. The ALJ provided a thorough and well-supported analysis in support of his RFC, and properly considered Plaintiff's alleged symptoms. The objective medical evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints. Further, as set forth above, the ALJ considered the entirety of Plaintiff's longitudinal medical records and her inconsistent reports of severity. *See* R. at 497-505.

Based on the foregoing, the Court finds the ALJ's determination that Plaintiff's subjective complaints are not supported by the record as a whole is supported by "good reasons and substantial evidence." *See Guilliams*, 393 F.3d at 801. His opinion thoroughly discusses the relevant medical and other evidence in the record, and he explicitly considered Plaintiff's allegations of migraines, headaches, and fatigue. Despite Plaintiff's arguments to the contrary, the ALJ properly considered of Plaintiff's subjective complaints.

  **(3) Other Objective Evidence in the Record**

Plaintiff maintains "the ALJ did not have any specific evidence to support the functional limitations contained in the RFC" without the medical experts' opinions. Doc. 13 at 14-15.

Further, she argues the RFC should have included absences and additional breaks in consideration of her headaches and fatigue. *Id*. at 11-25. Contrary to Plaintiff's claims, the objective medical evidence supports the ALJ's evaluation of her limitations. For example, in August 2014, Plaintiff indicated she had "bad headaches 10/30 days," and in October 2014, she reported she was "feeling better." R. at 1409, 1411-12. At almost every visit between January 2014 and August 2016 in which Plaintiff reported headaches, she denied fatigue.[10] *See e.g.*, R. at 1538-39, 1543-44, 1548-49, 1560-61, 1567-68, 1576-77, 1610-11, 1615-16. The ALJ properly evaluated the objective medical evidence and developed an appropriate RFC in accordance with the same.

Plaintiff also argues the ALJ's "reliance on normal imaging and examinations was misplaced given the nature of [her] migraines and fatigue." Doc. 22 at 22. However, the ALJ did not discount Plaintiff's claims of migraines and fatigue based on the MRI findings. *Id*. Rather, his evaluation of the MRI findings related to the progression (or lack thereof) of Plaintiff's MS. *See id*. The ALJ noted "except for a single occasion in April 2016 when [Plaintiff's] brain MRI showed 'one-two small enhancements,'" annual brain MRIs have consistently demonstrated "a relatively small number of lesions that have remained the same, with no enhancement to suggest active disease." R. at 484 (citing Exs. 4F/10 (R. at 333), 29F/8 (R. at 1415), 50F/140, 143, 150, 157, 163 (R. at 3426, 3429, 3436, 3443, 3449)). As discussed *supra*, the ALJ's evaluation of Plaintiff's migraines, headaches, and fatigue was supported by substantial evidence. Any argument to the contrary is without merit.

---

[10] At two visits, Plaintiff reported "tiredness" related to her MS but did not indicate her "tiredness" was severe or needed intervention. R. at 1539, 1544.

**B.     Mental Limitations in the ALJ's RFC**

Plaintiff also claims the mental limitations in the ALJ's RFC are not supported by substantial evidence. Doc. 13 at 1, 25-30. An ALJ's RFC assessment must address and consider medical source opinions. Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *7 (July 1, 1996). Courts review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations"; however, an ALJ is not required "to mechanically list and reject every possible limitation." *Nash*, 907 F.3d at 1090-91 (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). As mentioned *supra*, the ALJ need not adopt any specific medical opinion in its entirety when formulating a plaintiff's RFC. *See Hensley*, 829 F.3d at 932. An ALJ's responsibility is to determine an RFC based on all relevant evidence of which medical records and the opinions of physicians are a part. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

Plaintiff argues the ALJ erred by "omitting the moderate limitations from the opinion of Nurse Lazzari after finding it was due partial weight." Doc. 13 at 25-27. Specifically, she asserts the ALJ should have "either explained his reasons for discounting the moderate limitations from the opinions or included them in the RFC assessment." *Id*. at 28. Plaintiff does not dispute the ALJ provided a detailed discussion explaining why he discounted the marked and extreme limitations from Nurse Lazzari. *See id*. at 27.

Plaintiff was referred to Nurse Practitioner Linda Lazzari in August 2013. R. at 492, 1324-27. She was diagnosed with generalized anxiety disorder and major depressive disorder, recurrent, mild without psychotic features. R. at 492-93, 1326. Plaintiff continued mental health treatment with Nurse Lazzari approximately every three months until her fourth administrative hearing. R. at 493; *see also* R. at 1320-27, 1419-49, 1759-70, 3031-38, 3477-78, 3499-3506. In August 2016,

Nurse Lazzari provided a Medical Source Statement – Mental, which the ALJ afforded "partial weight."  R. at 495, 1406-07.  Plaintiff argues the ALJ "provided no basis for discounting [Nurse Lazzari's] assessment of moderate limitations," and although he concluded the "mild and moderate limitations are supported by the record," the ALJ failed to "include the limitations in the RFC assessment."  Doc. 13 at 27.

Despite Plaintiff's argument to the contrary, the ALJ explicitly considered the moderate limitations in Nurse Lazzari's opinion.  R. at 495.  He found Nurse Lazzari's "assessment of mild and moderate limitations [is] supported by the record."  *Id*.  The ALJ found Nurse Lazzari's opinion that Plaintiff "is no more than mildly limited in her ability to understand, remember, carry out very short and simple instructions and make simple work-related decisions" "support[s] that the claimant is capable of performing simple, routine, and repetitive work" *Id*.  He also concluded Nurse Lazzari's determination that Plaintiff was able "to maintain socially appropriate behavior and is only moderately limited in getting along with coworkers or peers" was "consistent with limiting [Plaintiff] to no more than occasional and superficial interaction with coworkers and supervisors."  *Id*.

The ALJ was not required to adopt the entirety of Nurse Lazarri's opinion.  *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citation omitted).  And Plaintiff does not establish how Nurse Lazzari's opinion conflicts with the RFC which limits her to, among other things, simple, routine, and repetitive tasks in an environment that does not require interaction with the public and no more than occasional and superficial interaction with coworkers and supervisors.  *See* R. at 482.  These limitations are consistent with Nurse Lazzari's opinion of Plaintiff's moderate limitations, and the ALJ appropriately accounted for the same.

Even if the ALJ erred in not expressly including the moderate limitations from Nurse Lazzari's opinion, Plaintiff has not demonstrated the ALJ's error, assuming there was an error, was not harmless. "To show an error was not harmless, [the plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (citation omitted). Plaintiff contends "[h]ad the ALJ included the moderate limitations from Nurse Lazzari's opinion in the RFC, the unskilled job base would have been impacted." Doc. 13 at 28-29. She, however, does not explain what the impact would have been, or what further consideration was required. *See id*.

Regardless, in consideration of Nurse Lazzari's assessment of moderate limitations, the ALJ formulated a mental RFC that was supported by substantial evidence and the record as a whole. As such, he properly accounted for Plaintiff's mental limitations within the RFC. Upon careful review of the record, the Court finds the RFC related to Plaintiff's mental limitations is supported by substantial evidence in the record and the Acting Commissioner did not err.

## IV. CONCLUSION

The Court finds the ALJ's RFC is not only supported by the medical opinions and the objective medical evidence but is supported by substantial evidence in the record as a whole. Accordingly, the Acting Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: September 29, 2022   /s/ W. Brian Gaddy
                          W. BRIAN GADDY
                          UNITED STATES MAGISTRATE JUDGE